**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

v.  Case No:  6:18-cr-59-Orl-31GJK

**DEVIN LASHAWN JEFFERSON, II**

**ORDER**

This matter comes before the Court on the Government's Motion to Reconsider the Granting of a New Trial (Doc. 99) and the Defendant's Response (Doc. 101).

**BACKGROUND**

**A.  Procedural Background**

On September 12, 2018, after a two-day trial, a jury found Devin Lashawn Jefferson, II ("**Jefferson**") guilty "of knowingly and intentionally attempting to possess with intent to distribute . . . a mixture and substance containing a detectable amount of furanyl fentanyl" in violation of Title 21, United States Code, Sections 841 and 846. (*See* Doc. 74.) Jefferson filed a post-trial motion requesting judgment of acquittal, or in the alternative, a new trial. (Doc. 77). Among other things, Jefferson based his motion on allegedly improper testimony elicited from Department of Homeland Security Special Agent Robert J. Palfrey ("**Palfrey**"), which had been the subject of a contemporaneous objection. Jefferson's counsel argued that Palfrey had provided expert testimony but had not provided notice of that testimony as required by the Federal Rules of Evidence.

At a hearing on November 2, 2018, the Court determined that it erred in overruling that objection. Stating its reasons on the record, the Court granted Jefferson a new trial pursuant to Federal Rule of Criminal Procedure 33. The Government now seeks reconsideration of that ruling.[1]

**B.      The Trial**[2]

The evidence admitted at trial showed that, on February 27, 2018, Jefferson's grandfather, Patrick Hughes ("**PH**"), spoke on the phone with Jefferson about a package from China (the "**Package**") that had been delivered to PH's home. Subsequently, Jefferson retrieved the Package from PH's home and drove away in his car, fleeing from surveilling law enforcement officers ("**LEOs**") in doing so. After removing a kilo of white powder from the Package, Jefferson abandoned his car on the roadside. He was arrested weeks later.

To persuade the jury that Jefferson believed that the Package contained furanyl fentanyl that he had ordered from China, the Government showed that LEOs had delivered it to the Residence in place of a similar package that had been seized at an international mail facility on April 20, 2017, and was found to contain that drug.[3] The Government also introduced business records from Western Union showing that, in 2017, Jefferson had used seventeen wire transfers (the "**Western Union Transfers**") to send more than $26,000 to payees in China, including a $1,750 transfer on March 15, 2017 and four $2,500 transfers on April 1, 2017.

---

[1] For the reasons stated at the hearing, and absent request from either party, the Court's denial of judgment of acquittal and rejection of Jefferson's arguments concerning admission of the audio recording are not subject to reconsideration.

[2] Given the parties' familiarity with the facts, only a brief summary of the trial is necessary.

[3] Like the seized package, the Package picked up by Jefferson was addressed to a "Florence Hughes" at PH's home.

In an effort to connect the Western Union Transfers to the seized package, the Government elicited testimony from Palfrey, the LEO tasked with investigating it. In addition to describing his investigation and his participation in the events of February 27, 2018, Palfrey offered testimony (the "**Palfrey Opinions**") regarding aspects of the illegal drug trade with China. Specifically, Palfrey testified that: (a) Western Union wire transfers are a common payment method for illegal drug purchases from China; (b) the average price of a kilo of synthetic drugs out of China is between $2,000 and $3,000; (c) Chinese drug suppliers discount these prices after consistent orders; (d) transactions for even smaller sums reflect quality-assurance sales; and (e) once ordered, it takes six to eight weeks to receive drugs from China. Under these circumstances, Palfrey opined that the Western Union Transfers—particularly their timing, the identity of the payees, and the sums involved—reflected activities consistent with purchases from Chinese suppliers of illegal drugs.

Objecting at trial, counsel for Jefferson argued that the Palfrey Opinions were barred by Rule 701, which prohibits lay witnesses from offering opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Jefferson's counsel further objected that the testimony was not admissible as expert testimony under Rule 702 because the Government had not provided a written summary of it as required under Federal Rule of Criminal Procedure 16. The Government insisted that Palfrey was a lay witness but asserted that he *could be* qualified as an expert witness under Rule 702.[4] In overruling the objection to Palfrey's

---

[4] Under Rule 702, expert opinion testimony may be elicited from "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" if the proponent of the testimony establishes that: (a) the expert's demonstrated technical or specialized knowledge will help the jury to "understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

testimony, the Court agreed with the Government. After Jefferson filed the motion for a new trial, the Court determined that this ruling had been incorrect. The Reconsideration Motion requires yet another assessment of this difficult issue.

## DISCUSSION

**A.    Lay Testimony and Expert Testimony**

Federal Rule of Evidence 701 provides that if a witness is not testifying as an expert, that witness may only testify to an opinion that is

>    (a) rationally based on the witness's perception;
>
>    (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
>    (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Rule 701 was amended in 2000 in an attempt "'to eliminate the risk that reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *See United States v. Jayyousi*, 657 F.3d 1085, 1102-03 (11th Cir. 2011) (quoting advisory committee's note); *United States v. Feliciano*, 300 F. App'x 795, 801 (11th Cir. 2009) (citing *United States v. Colon Osorio*, 360 F.3d 48, 52-53 (1st Cir. 2004)). Nonetheless, courts continue to struggle with the distinction between expert opinion and lay opinion.

The fact that a lay witness could be qualified as an expert is not determinative; rather, the line between expert and lay opinions must be drawn "based upon the nature of the testimony." *See United States v. Moran*, 778 F.3d 942, 966-67 (11th Cir. 2015); *United States v. Batista*, 558 F. App'x 874, 876 (11th Cir. 2014).

Given a defendant's right to discovery under Rule 16(a)(1)(g), the task of identifying expert opinions is particularly important in criminal cases.[5] Nonetheless, guidance from the United States Court of Appeals for the Eleventh Circuit has been mixed. For example, the Eleventh Circuit has questioned whether a law enforcement officer's "generalized" opinion testimony concerning "how much a kilogram of cocaine was worth in the United States" could be treated as lay opinion testimony under Rule 701(c). *See United States v. Tinoco*, 304 F.3d 1088, 1119-20 (11th Cir. 2002). Distinguishing opinion testimony based partly on past law enforcement experience and partly on the officer's personal observations made while investigating the defendant from generalized pricing opinions based solely on past law enforcement experience, the *Tinoco* Court opined that the opinion testimony from the latter category would run afoul of Rule 701(c) because it would constitute "specialized knowledge under Rule 702." *See Tinoco*, 304 F.3d at 1120 (applying harmless error analysis).

Since *Tinoco*, opinions from the Eleventh Circuit have been mixed. For instance, in 2016, the Eleventh Circuit observed in dicta that no "clear precedent" established that a LEO's trial testimony concerning the wholesale price of cocaine would fall outside the proper bounds of lay opinion testimony under Rule 701. *See United States v. Jones*, 657 F. App'x 938, 944-46 (11th Cir. 2016). In several other unpublished post-*Tinoco* cases, the Eleventh Circuit has rejected Rule 701(c) challenges to LEO testimony, sometimes based on pre-2000 precedent.[6]

---

[5] Under Federal Rule of Criminal Procedure 16(a)(1)(g), any testimony that the Government intends to use under Federal Rule of Evidence 702 during its case-in-chief at trial must be disclosed to the defendant in a written summary that provides descriptions of the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. *See United States v. Frazier*, 387 F.3d 1244, 1274 n.3 (11th Cir. 2004). The written summary is intended to put the defendant "in a position to support his objection to the opinion of a Government expert with an explanation of why he believes the opinion is unreliable." *Id*. Without a Rule 16 summary, a defendant cannot be expected to provide a specific ground for objecting to an expert witness. *See id*.

[6] *See*, *e.g.*, *United States v. Artiles-Martin*, 347 F. App'x 456, 459 (11th Cir. 2009)

Although unpublished decisions support the initial decision to allow Palfrey's opinion testimony, controlling case law establishes that the Court erred in doing so. Specifically, in a 2006 decision, the Eleventh Circuit agreed with the defendant that the trial court committed error—albeit harmless—when it allowed two LEOs to testify as lay witnesses based on their "specialized knowledge" concerning "the modus operandi of people involved in the drug business." *See United States v. Dulcio*, 441 F.3d 1269, 1273-74 (11th Cir. 2006). Other published decisions reflect the importance of basing non-expert LEO opinion testimony on personal observations made during an investigation rather than generalized knowledge obtained in unrelated matters. *See, e.g., Jayyousi*, 657 F.3d at 1101-04.[7] Given this precedent, the Court reaffirms its determination that Palfrey, as a lay witness, should not have been allowed to offer his opinions regarding various aspects of the illegal drug trade with China, detailed *supra*.

## B. Prejudice

Thus, the Court finds that the Government was obligated to provide a written summary of Palfrey's testimony pursuant to Fed. R. Crim. P. 16(a)(1)(g). It is undisputed that this did not occur. But this does not warrant a new trial unless Jefferson also establishes actual prejudice—that is, that the lack of a written summary adversely affected his ability to present his defense. *See Tinoco*, 304 F.3d at 1119.

---

(rejecting argument that officer provided expert testimony when he "applied his decade of experience as a police officer to something he personally perceived," relying on 1992 precedent).

[7] *See also Perez-Lopez*, 262 F. App'x at 979 (holding that "the district court did not abuse its discretion in admitting" LEO testimony under Rule 701 because his opinion that defendant's vehicle was conducting a 'heat run' . . . was based on his personal observations of the vehicle and his past experience" as a LEO); *Miranda v. United States*, No. 1:02-cr-586, 2009 WL 10671016, at *9 (N.D. Ga. Oct. 15, 2009) (finding that LEO opinion testimony about the use of false names in drug trafficking was expert testimony because "it was a generalized opinion" based on the LEO's experience and it "did not depend on" the LEO's "observations about a particular factual circumstance" pertinent to prosecution of the defendant).

In granting Jefferson's motion for a new trial, the Court did not identify any such actual prejudice. Rather, the Court required a retrial out of an abundance of caution. In its motion for reconsideration, the Government persuasively argues that the Court was too cautious in doing so.

In response to the motion for reconsideration, counsel for Jefferson argues that the Government's failure to provide a written summary of Palfrey's opinions resulted in prejudice because it prevented her from filing a motion to exclude that testimony, based on a lack of personal knowledge. (Doc. 101 at 6-7). However, that argument does not appear in Jefferson's motion for a new trial. Even if that argument had been made at the time, the Government has submitted additional documentation of pre-trial notice that had been provided to the defense, including copies of the Government's Rule 16(a) disclosure dated April 19, 2018 (Doc. 99-1) and e-mail correspondence dated August 31, 2018 (Doc. 99-2). Based on those documents, the defense had sufficient knowledge before the trial to file a *Daubert* motion in regard to Palfrey. For instance, the Rule 16(a) disclosure advised that testimony concerning the drug value and methods of ordering and payment would be provided by Palfrey. The intent to elicit such specialized information from Palfrey was reiterated in the August e-mail correspondence, which correctly advised that information concerning Palfrey's "training, experience, and opinions are set forth in the complaint." (*See* Doc. 99-2, p. 1.) In her email response, defense counsel did not challenge the adequacy of such information or request additional disclosures. (*See id*.) Under these circumstances, and given the thoroughness of the cross-examination to which Palfrey was subjected at trial, the Court finds no prejudice to Jefferson's defense resulting from the failure to provide a written summary of his testimony. Thus, any error in admitting Palfrey's opinion testimony was harmless, and the motion for reconsideration will be granted.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

(1) The Government's Motion to Reconsider the Granting of a New Trial (Doc. 99) is **GRANTED.**

(2) The Court's order of November 2, 2018 (Doc. 86) granting a new trial is **VACATED;**

(3) The Defendant's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial (Doc. 77) is **DENIED;** and

(4) The trial set for December 4, 2018 (Doc. 90) is **CANCELLED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 29, 2018.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE